IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

```
LORINZA ASH, et al.,              :
                                  :
      Plaintiffs,                 :
                                  :
vs.                               :        CIVIL ACTION 08-0525-WS-M
                                  :
PROVIDENCE HOSPITAL, et al.,      :
                                  :
      Defendants.                 :
```

REPORT AND RECOMMENDATION

The Motion to Remand filed by Plaintiffs Lorinza Ash and Ruth Ash (Doc. 13) and the Motion to Dismiss filed by Defendants Boyer and Cardio-Thoracic and Vascular Surgical Associates, P.C. (Doc. 1, Exhibit A, pp. 33-34) have been referred for report and recommendation, under 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2. Jurisdiction has been invoked in this Court under both 28 U.S.C. § 1331 (subject-matter) and 28 U.S.C. § 1332 (diversity). After consideration, it is recommended that Plaintiffs' Motion (Doc. 13) be granted and that Defendants' Motion (Doc. 1, Exhibit A, pp. 33-34) be denied.

The facts are, very briefly, as follows. On August 23, 2006, Plaintiff Lorinza Ash (hereinafter *Ash*)[1] underwent a heart catheterization and coronary artery bypass, which was performed

---

[1]There are two Plaintiffs, Lorinza and Ruth Ash, husband and wife (Doc. 1, Exhibit A, ¶¶ 2, 98), who will be referred to in the singular (Ash) by the Court unless it is necessary to distinguish between them.

by Defendant Dr. John Boyer[2] at Defendant Providence Hospital, located in Mobile, Alabama (Complaint, ¶¶ 3, 5, 14).[3]  During the procedure, Ash was given Heparin; he later developed Heparin-induced thrombocytopenia (*HIT*), which led to complications requiring amputation, above the elbow, of the right arm (*id.* at ¶ 15).  Also, Plaintiff ultimately suffered "the loss of both lower extremities" (*id.* at ¶ 19).

On August 18, 2008, Plaintiff filed this action in the Mobile County Circuit Court, raising eight different claims:  (1) negligence/wantonness against Boyer, Providence Hospital, and Cardio-Thoracic and Vascular Surgical Associates, P.C. (hereinafter CVSA), Baxter International, Inc., Baxter Healthcare Corporation,[4] Scientific Protein Laboratories (hereinafter SPL),[5]

---

[2]Ash has asserted that Boyer is an employee or agent of Providence Hospital or Defendant Cardio-Thoracic and Vascular Surgical Associates, P.C. (Doc. 1, Exhibit A, ¶¶ 4, 6).

[3]Rather than continuing to refer to the Complaint as Exhibit A to Document 1, the Court will, for the remainder of this Report, simply refer to it as the Complaint.
   The Court is aware that Plaintiff has filed a First Amended Complaint (Doc. 34).  However, as the subject of this Report is a Motion to Remand and it is necessary to consider the Complaint at the time it was filed, *see Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939), the Court will rely on the Original Complaint (though noting that Plaintiff has asserted that the only change in the Amended Complaint was to properly name two of the Defendants (*see* Doc. 34, pp. 1-2), a change which the Court will adopt as well).

[4]Plaintiff has asserted that Baxter International Inc. was "engaged in the design, manufacture, production, testing, inspection, mixture, labeling, marketing, advertising, sale, promotion and/or distribution of Heparin for ultimate sale in Mobile County" (Complaint at ¶ 7).
   Baxter Healthcare Corporation is a wholly-owned subsidiary of Baxter International, Inc. (Complaint at ¶ 8; Doc. 7, ¶ 8).
   For purposes of this report, the Court will refer to these two

American Capital Strategies, Inc. (hereinafter ACAS),[6] and Tech-Pool Bio Pharma, Co., Ltd. (hereinafter Tech-Pool);[7][8] (2) negligence/wantonness against the Pharmaceutical Defendants; (3) a claim under the Alabama Extended Manufacturers Liability Doctrine against the Drug Defendants; (4) breach of express warranty against the Pharmaceutical Defendants; (5) breach of implied warranty against the Drug Defendants; (6) a claim under the Alabama Deceptive Trade Practices Act against the Pharmaceutical Defendants; (7) fraud against the Drug Defendants; and (8) a claim for loss of consortium by Ruth Ash against all Defendants (Complaint). Each claim seeks compensatory and

_____

Defendants, together, as Baxter, in the singular.

[5]Scientific Protein Laboratories has admitted that it is wholly-owned by SPL Acquisition Corp., that it "manufactures the active pharmaceutical ingredient for heparin sodium [] at its facility in Waunakee, Wisconsin," and that it is part of a joint venture, Changzhou SPL Co., Ltd. which also manufactures heparin sodium in Changzhou City, China (Doc. 36 at ¶ 9). SPL stated that it sells heparin to Baxter "for use in its finished pharmaceutical products" (*id*.).

[6]American Capital Strategies, Inc. refers to itself as "American Capital, Ltd. (hereinafter ACAS)" and admits that it "owns 100% of the outstanding membership interests in SPL;" however, it maintains that it does not own any direct interest in SPL (Doc. 37 at ¶ 10).

[7]Plaintiff has asserted that Tech-Pool Bio Pharma, Co., Ltd. is a Chinese company that "maintains a joint venture agreement with SPL [which is involved in the] manufacturing, selling and distributing [of] Heparin," including products provided to Baxter (Complaint at ¶ 11). There is nothing in the record to indicate that service has yet been perfected on Tech-Pool.

[8]In the remainder of this Report, Baxter, SPL, ACAS, and Tech-Pool will be referred to, collectively, as the Pharmaceutical, or Drug, Defendants. The Court will use this designation even though it appears that Tech-Pool has yet to be served.

punitive damages.  On September 4, 2008, Defendants Boyer and

CVSA filed a Motion to Dismiss (Doc. 1, Exhibit A, pp. 33-34).[9]

On September 17, 2008, Baxter, with the consent of SPL and

ACAS, removed the action to this Court (Doc. 1 and Exhibit B).

In removing this action, the Pharmaceutical Defendants have

asserted that this Court has jurisdiction over this action in two

different ways (Doc. 1).  The first assertion of jurisdiction is

that this action arises under federal law under 28 U.S.C. § 1331;

more specifically, this action is purported to require an

examination of the law set out in the Federal Food, Drug, and

Cosmetics Act, found at 21 U.S.C. § 301 (Doc. 1, ¶¶ 6-15).  The

Drug Defendants also assert diversity jurisdiction, under 28

U.S.C. § 1332, arguing that the non-Pharmaceutical Defendants

have been fraudulently joined to prevent removal of this action

(Doc. 1, ¶¶ 16-21).  Subsequent to the Removal, Plaintiff filed a

Motion to Remand (Doc. 13) to which Baxter has Responded (Doc.

25).[10]  The Court will now take up Plaintiff's Motion.

As a preliminary matter, the Court notes that, in a removal

action, the party asserting jurisdiction has the burden of

establishing proof of jurisdiction by a preponderance of the

evidence.  *McNutt v. General Motors Acceptance Corp. of Indiana,

Inc.*, 298 U.S. 178 (1936); *see also Lowery v. Alabama Power Co.*,

---

[9]The Court notes that Plaintiff has filed a Response to the
Motion to Dismiss (Doc. 18).

[10]The Court has received no response from Defendants SPL or ACAS.

483 F.3d 1184, 1210 (11ᵗʰ Cir. 2007), *cert. denied sub nom. Hanna Steel Corp. v. Lowery*, 128 S.Ct. 2877 (2008).  In a removal action, that burden is on the defendant.  *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92 (1921).  Removal is a statutory remedy which must be narrowly construed so as to limit federal jurisdiction.  *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100 (1941); *Robinson v. Quality Ins. Co.*, 633 F.Supp. 572 (S.D. Ala. 1986).

The Court notes that any civil action over which the district court would have original jurisdiction may be removed by the defendant to the district court for the district in which the action is pending.  28 U.S.C. § 1441(a).  Under 28 U.S.C. § 1331, commonly known as subject-matter jurisdiction, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."

In the Motion to Remand, Plaintiff has directed this Court's attention to *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 805 (1986), a factually similar case,[11] in which the U.S. Supreme Court answered the question "whether the incorporation of a federal standard in a state-law private

---

[11]In *Merrell Dow*, consumers brought an action against a drug manufacturer in state court, asserting that pregnant women's ingestion of a drug, Bendectin, during their pregnancy resulted in multiple deformities in the babies at birth.  The argument made by the plaintiffs was that the labeling had provided insufficient warning that the drug was potentially dangerous.

action, when Congress has intended that there not be a federal

private action for violations of that federal standard, makes the

action one 'arising under the Constitution, laws, or treaties of

the United States.'"  The answer was "No."  In affirming the

lower court decision, the Supreme Court specifically quoted the

Sixth Circuit Court of Appeals' reasoning, which was as follows:

> [T]he [Federal Food, Drug and Cosmetic Act]
> does not create or imply a private right of
> action for individuals injured as a result of
> violations of the Act.  Federal question
> jurisdiction would, thus, exist only if
> plaintiffs' right to relief depended
> necessarily on a substantial question of
> federal law.  Plaintiffs' causes of action
> referred to the FDCA merely as one available
> criterion for determining whether Merrell Dow
> was negligent.  Because the jury could find
> negligence on the part of Merrell Dow without
> finding a violation of the FDCA, the
> plaintiffs' causes of action did not depend
> necessarily upon a question of federal law.
> Consequently, the causes of action did not
> arise under federal law and, therefore, were
> improperly removed to federal court.

*Merrell Dow*, 478 U.S. at 806-07 (quoting *Thompson v. Merrell Dow*

*Pharmaceuticals, Inc.*, 766 F.2d 1005, 1006 (6th Cir. 1985)).  In

reaching this decision, the Supreme Court rejected three

arguments made by the drug manufacturer as to why the federal

courts should take jurisdiction over this type of case:  (1)

"that federal-question jurisdiction is appropriate when 'it

appears that some substantial, disputed question of federal law

is a necessary element of one of the well-pleaded state claims.'"

*Merrell Dow*, 478 U.S. at 813 (quoting *Franchise Tax Board v. Construction Laborers Vacation Trust*, 463 U.S. 1, 13 (1983)); (2) that "there is a powerful federal interest in seeing that the federal statute is given uniform interpretations, and that federal review is the best way of insuring such uniformity." *Merrell Dow*, 478 U.S. at 815; and (3) that there was a question as to the extraterritorial meaning of certain provisions of the Act. *Merrell Dow*, 478 U.S. at 816-17.

In making its argument for the subject-matter jurisdiction of this Court, Baxter acknowledges *Merrell Dow*, but points to a more recent Supreme Court case, *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 314 (2005), which wrestled with the following question:  "[D]oes a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities?"  The answer to the fact situation[12] in *Grable* was "Yes."  The Court held that because the only legal or factual issue in the case was an interpretation of federal law as to whether or not the plaintiff had been given adequate notice that the IRS was about to seize it, the Court

---

[12]In *Grable*, a former Michigan landowner brought a State action to quiet title against the new owner, claiming that the Internal Revenue Service had failed to give him proper notice before they seized it and sold it to the new owner.  The new owner removed the action to federal court, asserting federal question jurisdiction.

enjoyed subject-matter jurisdiction.  *Grable*, 545 U.S. at 315.

That is not the circumstance in this action, however, as this

Court is not presented with only a single legal or factual issue

that can be resolved by a determination of federal law.

The Court further notes that, in reaching its decision, the

*Grable* Court specifically discussed how its decision was impacted

by *Merrell Dow*, stating the following:

> *Merrell Dow* should be read in its entirety as
> treating the absence of a federal private
> right of action as evidence relevant to, but
> not dispositive of, the "sensitive judgments
> about congressional intent" that § 1331
> requires.  The absence of any federal cause
> of action affected *Merrell Dow*'s result two
> ways.  The Court saw the fact as worth some
> consideration in the assessment of
> substantiality.  But its primary importance
> emerged when **the Court treated the
> combination of no federal cause of action and
> no preemption of state remedies for
> misbranding as an important clue to
> Congress's conception of the scope of
> jurisdiction to be exercised under § 1331.
> The Court saw the missing cause of action not
> as a missing federal door key, always
> required, but as a missing welcome mat**,
> required in the circumstances, when
> exercising federal jurisdiction over a state
> misbranding action would have attracted a
> horde of original filings and removal cases
> raising other state claims with embedded
> federal issues.  For if the federal labeling
> standard without a federal cause of action
> could get a state claim into federal court,
> so could any other federal standard without a
> federal cause of action.  And that would have
> meant a tremendous number of cases.

*Grable*, 545 U.S. at 318 (emphasis added).

8

In this action, the Court finds this language in *Grable* to be the most significant passage relevant to the issues before it. The Court has read through the Response and notes the detail in which Baxter has explained the regulatory process necessary for getting a pharmaceutical tested, approved, and marketed (Doc. 25, pp. 5-10), as well as its arguments as to why this Court should retain jurisdiction over this matter (Doc. 25, pp. 11-16), but also notes that Defendants, in a footnote, acknowledges that "[f]ederal courts are currently split on the scope of preemption by the FDCA" with regard to "situations involving [] imminent danger to [the] health or gross deception of the consumer" (Doc. 25, p. 10 n.2).[13]  In this acknowledgment, the Court finds that Baxter has failed to demonstrate that this Court has subject-matter jurisdiction over this action in that, first, Congress has not provided, through the FDCA, a federal door key, but has also failed to put out a welcome mat.[14]  Therefore, the Court finds Defendant's removal of this action on the basis of subject-matter jurisdiction to have been improper.

_____

[13]Baxter further states that "the Supreme Court [is] set to clarify the issue in *Wyeth v. Levine*, an appeal from the Supreme Court of Vermont" (Doc. 25, p. 10 n.2).  Levine v. Wyeth, 944 A.2d 179 (Vt. 2006), *cert. granted*, --- U.S. ----, 128 S.Ct. 1118, 169 L.Ed.2d 845 (2008).  The Court notes that no decision has been reached as of the date of this Report.

[14]Without going through all of the preemption analysis discussed therein, the Court notes that it has studied *Levine v. Wyeth*, 944 A.2d 179 (Vt. 2006), and finds that its reasoning, that state tort claims are not pre-empted by Food and Drug regulations made pursuant to the FDCA, is sound and adopts this conclusion herein.

However, in removing this action, the Pharmaceutical Defendants asserted two grounds for jurisdiction.  The second was diversity jurisdiction in which this Court has jurisdiction over actions between citizens of different states so long as all plaintiffs are diverse from all defendants, *Strawbridge v. Curtiss*, 7 U.S. 267 (1806), and the amount in controversy exceeds $75,000.  28 U.S.C. § 1332(b).

Ash has challenged the removal of this action, on the basis of diversity on two grounds.  First, Plaintiff asserts that all the parties are not diverse (Doc. 13, pp. 6, 8-10).  Second, Ash has argued that the Defendants have failed to prove that the amount in controversy exceeds $75,000 (Doc. 13, pp. 7-8).  The Court will take these arguments up as presented.

Ash's first assertion is that all of the parties are not diverse from one another.  This point has been conceded by the Drug Defendants, in the Notice of Removal, who argue that Defendants Boyer, Providence Hospital, and CVSA, who are all citizens of Alabama, have been fraudulently joined in this action to defeat federal jurisdiction; the Pharmaceutical Defendants further assert that the non-Drug Defendants (or Medical Provider Defendants) are dispensable parties (Doc. 1, ¶¶ 16g, 18-19).

It is noted that "[a]n action may [] be removable if the joinder of non-diverse parties is fraudulent." *Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1359 (11th Cir. 1996), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204

10

F.3d 1069 (11th Cir. 2000).  The Eleventh Circuit Court of
Appeals has stated that there are three situations in which
joinder of a defendant may be considered fraudulent:

> The first is when there is no possibility
> that the plaintiff can prove a cause of
> action against the resident (non-diverse)
> defendant.  The second is when there is
> outright fraud in the plaintiff's pleading of
> jurisdictional facts.  [A third situation is]
> where a diverse defendant is joined with a
> nondiverse defendant as to whom there is no
> joint, several or alternative liability and
> where the claim against the diverse defendant
> has no real connection to the claim against
> the nondiverse defendant.

*Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1288 (11th Cir.
1998).  In making this determination, this Court looks at
"plaintiff's pleading at the time of the petition for removal."
*Pullman Co. v. Jenkins*, 305 U.S. 534, 537 (1939).  All questions
of fact and law are resolved in favor of the Plaintiff.
*Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.
1989).  The Court may consider affidavits and deposition
transcripts in reaching its determination.  *Id.*

Baxter has asserted, first, that "there is no possibility
that the Plaintiffs can prove a cause action against" the Medical
Provider Defendants (Doc. 25, p. 17).  In making this assertion,
Baxter has relied on the Motion to Dismiss[15] filed by Defendants

---

[15]The Court did not, frankly, wish to address the Motion to
Dismiss until the Motion to Remand had been fully resolved.  However,
as the Motion has been thrust upon it as a means of addressing the

Boyer and CVSA (*id.; see* Doc. 1, Exhibit A, pp. 33-34) in which they argue that the Complaint fails to comply with Ala. Code § 6-5-551[16] in that it does not include "a detailed specification and factual description of each act or omission alleged by plaintiff to render the healthcare provider liable to plaintiff . . . [including] the date, time, and place of the act or acts" (Doc. 1, Exhibit A, p. 33).

    The Court notes, initially, that "[w]hen considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'" *Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long County*, 999 F.2d 1508, 1510 (11th Cir. 1993)).  In order to state a claim for relief, the Federal Rules of Civil Procedure state that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  The U.S. Supreme Court explained that the purpose of the rule was to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests."  *Conley v. Gibson*, 355 U.S.

---

Motion to Remand, the Court will proceed.

    [16]In this diversity action, Alabama law controls.  *Erie Railroad Co. v. Tompkins*, 304 U.S. 64 (1938).

41, 47 (1957).[17]  While factual allegations do not have to be detailed, they must contain more than "labels and conclusions;" a formulaic recitation of the elements of a cause will not do." *Bell Atlantic Corporation v. Twombley*, 550 U.S. 554, ---, 237 S.Ct. 1955, 1965 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  "Factual allegations must be enough to raise a right to relief above the speculative level."  *Id.* (citations omitted).  "Facts that are 'merely consistent with' the plaintiff's legal theory will not suffice when, 'without some further factual enhancement [they] stop short of the line between possibility and plausibility of "entitle[ment] to relief."'" *Weissman v. National Association of Securities Dealers, Inc.*, 500 F.3d 1293, 1310 (11th Cir. 2007) (quoting *Twombley*, 127 S.Ct. at 1966 (quoting *DM Research, Inc. v. College of American Pathologists*, 170 F.3d 53, 56 (1st Cir. 1999)).  As noted by the Supreme Court, Plaintiffs must "nudge[] their claims across the line from conceivable to plausible[; otherwise,] their complaint must be dismissed."  *Twombly*, 550 U.S. at ---, 127 U.S. at 1974. It is noted, however, that a complaint may be dismissed, under Federal Rule of Civil Procedure 12(b)(6), "on the basis of a

---

[17]*Conley* also stated that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.  The U.S. Supreme Court has done away with this standard in *Bell Atlantic Corporation v. Twombley*, 550 U.S. 544, ---, 127 S.Ct. 1955, 1966-69 (2007).  The Court, nevertheless, finds *Conley*'s statement regarding the purpose of Rule 8(a)(2) to be useful here in deciphering the analysis necessary for evaluating Plaintiff's claims.

dispositive issue of law."  *Executive 100, Inc. v. Martin County*, 922 F.2d 1536, 1539 (11th Cir.) (citing *Neitzke v. Williams*, 490 U.S. 319 (1989)), *cert. denied*, 502 U.S. 810 (1991).

In discussing the statutory section referred to by the Defendants, the Alabama Supreme Court has stated the following:

> [W]hen a plaintiff files a complaint alleging that a health care provider breached the standard of care owed to the plaintiff, although every element of the cause of action need not be stated with particularity, the plaintiff must give the defendant health care provider fair notice of the allegedly negligent act and must identify the time and place it occurred and the resulting harm.  If the complaint affords the defendant health care provider fair notice of these essential elements, the courts should strive to find that the complaint includes the necessary "detailed specification and factual description of each act and omission alleged by plaintiff to render the health care provider liable to plaintiff."

*Mikkelsen v. Salama*, 619 So.2d 1382, 1384 (Ala. 1993) (quoting Ala. Code § 6-5-551.

The Court has reviewed Plaintiff's allegations against Boyer and CVSA (Complaint, ¶¶ 14-17, 18B, 98) and finds that they are both detailed and specific.  The Court finds that the allegations in the Complaint have provided these Defendants "fair notice of the essential elements" of the claims against them under *Mikkelsen*.  Furthermore, the Court finds that the assertions meet the requirements of *Twombley*.  Therefore, it is recommended that

the Motion to Dismiss[18] (Doc. 1, Exhibit A, pp. 33-34), filed by Defendants Boyer and CVSA, be denied and that the claims against them be allowed to proceed.

Returning to Baxter's assertion, with regard to fraudulent joinder, that Plaintiff could not possibly prove a claim against the Non-Drug Defendants, the Court finds the argument to be unconvincing.

Baxter next asserts that Plaintiff's claims against the Pharmaceutical Defendants and the Medical Provider Defendants are inconsistent (Doc. 25, pp. 17-18). The Court understands the argument to be that the claims against the two different groups of Defendants are mutually exclusive.

The Court, however, does not read the Complaint that way. Rather, the Court, generally, understands Plaintiff to bring claims against the Drug Defendants for not properly warning of the dangers associated with taking Heparin while the claims against the Medical Provider Defendants assert a failure to recognize the damage done by Heparin and taking appropriate

---

[18]The Court notes that Defendants Boyer and CVSA also filed a Supplement to the Motion to Dismiss (Doc. 17) which was considered in reaching this decision.
    The Court notes that the Motion to Dismiss also requested, "in the Alternative, [a] Motion for More Definite Statement" (Doc. 1, Exhibit A, pp. 33-34). Because of the Court's determination that the allegations were sufficient, it is recommended that this part of the motion be denied as well.
    The Court further notes that in the Supplemental Motion, Defendants also requested, "in the Alternative, [a] Motion to Remand" (Doc. 17). In light of the Court's decision on Plaintiff's Motion to Remand, it is recommended that this Motion be granted.

measures to limit the damage.[19]  Be that as it may, the more appropriate vehicle for Baxter's assertion is a Motion for Summary Judgment or a jury verdict.

Baxter next argues that the claims are unrelated (Doc. 25, p. 19).  This argument is the third[20] *Trigg* factor, *i.e.*, "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Trigg*, 154 F.3d at 1288.

Plaintiff has argued that a relationship exists between the two groups of Defendants, pointing to a specific paragraph in the negligence/wantonness claim against the Pharmaceutical Defendants (Doc. 13, p. 9).  The portion of that paragraph which the Court deems[21] relevant is as follows:

54. Defendants were negligent and/or wanton

---

[19]Baxter acknowledges this distinction as well when, in asserting its next argument, it states the following:  "Plaintiffs' claims against the Pharmaceutical Defendants center on whether heparin was contaminated, while Plaintiffs' claims against the Medical Provider Defendants relate entirely to the Medical Providers' actions after the administration of heparin.  There is no overlap (timewise or otherwise) in these claims, no common liability, and no common questions of law or fact" (Doc. 25, p. 19).

[20]The Court does not read Baxter's Response as making any argument regarding the second *Trigg factor*, *viz.*, that there has been outright fraud in the naming of the Medical Provider Defendants.  *See Trigg*, 154 F.3d at 1288.

[21]As Plaintiff did not specify the portions of the paragraph which it believes support the argument, the Court must guess.

in the preparation, design, research, development, manufacturing, inspection, monitoring, labeling, marketing, promotion, and selling of their anticoagulant therapy drug Heparin, in that they negligently and/or wantonly:

***

l) Failed to use due care in the marketing of Heparin to the co-defendants to prevent risks to individuals when the drug was infused or injected;
m) Failed to use due care in the promotion of the Heparin to the co-defendants to prevent risks to individuals when the drug was infused or injected;
n) Failed to use due care in the selling of the Heparin to the co-defendants to prevent risks to individuals when the drug was infused or injected;
o) Failed to provide adequate training and information to healthcare providers for the appropriate use of the Heparin;
p) Failed to warn Plaintiff and his healthcare providers, prior to, during and after actively encouraging and promoting the sale of the Heparin, either directly or indirectly, orally or in writing, about the following:

I. the need for comprehensive and frequent medical monitoring to ensure early discovery of potentially fatal strokes, heart attacks, venous thromboembolism, pulmonary embolism, micro-embolism, thrombocytopenia and other adverse side effects;
ii. that safer, equally effective alternative anti-coagulant therapies are available;
iii. the possibility of becoming disabled as a result of the use of the drugs;
iv. the adverse side effects associated with the use of the drug, including, but not limited to, potentially fatal strokes, heart attacks, venous

17

> thromboembolism, pulmonary embolism,
> micro-embolism, thrombocytopenia and
> other adverse side effects.

(Complaint, ¶ 54). The Court reads this particular passage of the Complaint to assert that the Drug Defendants failed to adequately prepare and inform the Medical Provider Defendants for the potential problems which can arise after having administered Heparin. Having raised the claim against the Medical Provider Defendants that they failed to recognize the damage caused by Heparin and further failed to take appropriate measures to limit that damage, Plaintiff has effectively—or not—put the two groups of Defendants in the position of pointing at each other for the jury to apportion responsibility for the aftercare once the damage was done. This demonstrates a sufficient relationship of the claims to lead the Court to find that Baxter has failed to prove the third *Trigg* factor. Having failed to demonstrate the other two factors as well, the Court finds that Baxter has not demonstrated that the Non-Drug Defendants have been fraudulently joined to this action to prevent federal jurisdiction.[22]

Having made that determination, the Court finds that this action was improperly removed to this Court. Therefore, it is recommended that Plaintiff's Motion to Remand (Doc. 13) be granted and that this action be remanded back to the Mobile

---

[22]With this determination, the Court finds it unnecessary to tackle the issue of whether the Pharmaceutical Defendants have demonstrated that the amount in controversy exceeds $75,000.

18

County Circuit Court for all further proceedings.

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   **Objection**.  Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court.  Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.  *See* 28 U.S.C. § 636(b)(1)©; *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).  The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.  The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection.  The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed <u>de novo</u> and a different disposition made.  It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection.  Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   **<u>Transcript (applicable where proceedings tape recorded)</u>**.
Pursuant to 28 U.S.C. § 1915 and Fed.R.Civ.P. 72(b), the magistrate judge finds that the tapes and original records in

this action are adequate for purposes of review.  Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.

DONE this 9th day of January, 2009.


                              s/BERT W. MILLING, JR.
                              UNITED STATES MAGISTRATE JUDGE