IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

LORINZA ASH, *et al.*,                    )
                                          )
         Plaintiffs,                      )
                                          )
v.                                        )        CIVIL ACTION 08-0525-WS-M
                                          )
PROVIDENCE HOSPITAL, *et al.*,            )
                                          )
         Defendants.                      )

## ORDER

This matter comes before the Court on Plaintiff's Motion to Remand (doc. 13) this action to the Circuit Court of Mobile County, Alabama.  On January 9, 2009, following briefing by the parties, Magistrate Judge Milling entered a Report and Recommendation (doc. 38) wherein he concluded that the Motion to Remand is due to be granted because federal subject matter jurisdiction is lacking.  Defendants Baxter International Inc. and Baxter Healthcare Corporation (collectively "Baxter") have filed a Statement of Objection (doc. 39) and a Memorandum of Law (doc. 40) enumerating several objections to the Report and Recommendation.  Those objections have been referred to the undersigned.

I.       **Relevant Background.**

This action arises from injuries allegedly sustained by plaintiff Lorinza Ash in August 2006 as a result of a heart catheterization and coronary bypass procedure during which he was administered heparin, an anticoagulant medication that inhibits the formation of blood clots.[1] According to the Complaint, Ash suffered heparin-induced thrombocytopenia ("HIT syndrome"), which led to gangrene and ultimately necessitated the amputation of his right arm. Ash filed the Complaint in state court against eight named defendants, among them Baxter (which allegedly manufactured, marketed and distributed the heparin administered to Ash), John

---

[1]      Lorinza Ash's wife, Ruth Ash, is also a plaintiff herein; however, for simplicity's sake, this Order will refer to plaintiffs, individually and collectively, as "Ash."

Boyer, M.D. (the physician who performed the coronary artery bypass procedure on Ash), Providence Hospital (the facility where the procedure was performed), and Cardio-Thoracic and Vascular Surgical Associates, P.C., or "CVSA" (the medical practice group with which Dr. Boyer was affiliated).[2]

The comprehensive 28-page, 98-paragraph Complaint asserts eight causes of action against the named defendants. All of these claims nominally arise under Alabama state law, including causes of action alleging negligence/wantonness by Dr. Boyer, Providence Hospital, and CVSA in dozens of respects based, *inter alia*, on their alleged failure to recognize and treat Ash's HIT syndrome in a timely manner; a claim for negligence/wantonness against Baxter and other pharmaceutical defendants based, *inter alia*, on their alleged failure to exercise ordinary care in designing, developing, manufacturing, labeling, marketing and selling heparin and their alleged dissemination of false and misleading information concerning the drug's safety and efficacy; a claim against the pharmaceutical defendants pursuant to the Alabama Extended Manufacturers Liability Doctrine ("AEMLD") predicated on allegations that heparin is a defective and unreasonably dangerous product; a claim of breach of express and implied warranty against the pharmaceutical defendants; a claim of violation of the Alabama Deceptive Trade Practices Act by the pharmaceutical defendants; a fraud claim against certain pharmaceutical defendants; and a loss of consortium claim brought by Ruth Ash.

On September 17, 2008, Baxter filed a Notice of Removal (doc. 1) removing this action to federal court, asserting both federal question and diversity jurisdiction. With respect to the former, Baxter reasoned that Ash's state-law claims against the pharmaceutical defendants essentially seek to impose liability based on defendants' alleged non-compliance with the Federal Food, Drug and Cosmetics Act, 21 U.S.C. §§ 301 *et seq.* ("FDCA"), and that such claims are "inextricably intertwined with the comprehensive federal scheme governing prescription drugs." (Doc. 1, at 6.) As for the latter, Baxter acknowledged that several defendants (namely, Dr. Boyer, Providence Hospital and CVSA) are citizens of the same state as

---

[2]     The Amended Complaint (doc. 34) names as defendants several other entities, including Scientific Protein Laboratories, LLC, American Capital, Ltd., and Tech-Pool Bio Pharma Co., Ltd., as well as various fictitious defendants. These defendants are not germane to the pending Motion to Remand and have not participated in the briefing process.

plaintiffs; nonetheless, Baxter insisted that those defendants' citizenship must be ignored in the jurisdictional calculus because they were fraudulently joined.

Ash timely filed a Motion to Remand (doc. 13) this action to state court. As grounds for seeking remand, Ash argued that federal question jurisdiction under 28 U.S.C. § 1331 is absent because plaintiffs' claims arise exclusively under state law, not federal law. Ash further contended that diversity jurisdiction under 28 U.S.C. § 1332 does not lie because complete diversity is lacking and Baxter has not met its stringent burden of establishing that the non-diverse defendants were fraudulently joined. Baxter filed a memorandum of law in opposition to plaintiffs' Motion to Remand. Via Report and Recommendation entered on January 9, 2009, Magistrate Judge Milling concluded that plaintiffs had the better argument with respect to both the § 1331 and § 1332 jurisdictional issues, that federal subject matter jurisdiction is not present, and that remand of this action to state court is required.

Baxter's Objections to the Report and Recommendation are framed in the following terms: (1) this Court should grant Baxter's Motion to Stay and defer ruling on all jurisdictional matters to allow the Judicial Panel on Multidistrict Litigation to decide such questions after this case is transferred to the ongoing MDL proceedings;[3] (2) the Complaint presents a substantial federal question because, notwithstanding its purely state-law nature on its face, "it squarely challenges determinations made by the FDA and the adequacy of federal requirements governing the manufacture and sale of prescription drugs" (doc. 40, at 9); and (3) diversity jurisdiction lies because the non-diverse defendants were both fraudulently joined and fraudulently misjoined. Each of these objections will be considered in turn.[4]

---

[3]      This action has been considered for transfer to the United States District Court for the Northern District of Ohio for consolidated proceedings in the litigation styled *In re: Heparin Products Liability Litigation*, and bearing MDL No. 1953. To date, however, the MDL Panel has not ordered such a transfer of this case to the consolidated proceedings in Ohio.

[4]      In reviewing the Report and Recommendation, the Court recognizes its statutory obligation to "make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). That said, the Court also follows the principle that "[n]either the Constitution nor the statute requires a district judge to review, *de novo*, findings and recommendations that the parties themselves accept as correct." *United States v. Woodard*, 387 F.3d 1329, 1334 (11th Cir. 2004) (citation omitted).

**II.      Analysis.**

     *A.      Whether This Action Should be Stayed Pending MDL Transfer.*

As its first objection, Baxter maintains that the Magistrate Judge erred in "addressing the merits of the remand motion prior to the merits of the stay request." (Doc. 40, at 4.) According to Baxter, the Magistrate Judge should have considered and ruled on its Motion to Stay this action before reaching the Motion to Remand. In Baxter's view, all of the jurisdictional issues implicated by the Motion to Remand should be reserved for disposition after transfer by the MDL Panel to the consolidated heparin products liability litigation pending in the U.S. District Court for the Northern District of Ohio. On that basis, Baxter urges this Court to "address the merits of the stay motion and grant the stay." (Doc. 40, at 8.)

This objection is both perplexing and procedurally incorrect. To be sure, Baxter did file a Motion to Stay (doc. 10) back on September 24, 2008; however, Baxter's repeated suggestion that the Motion to Stay has never been decided and that the Magistrate Judge bypassed the stay request to address the jurisdictional issues raised by the Motion to Remand is simply counterfactual. Review of the court file confirms that Magistrate Judge Milling entered an Order (doc. 22) on October 9, 2008 denying the Motion to Stay. As such, there is no pending motion to stay this action, and the Magistrate Judge properly ruled on the Motion to Stay before turning his attention to the Motion to Remand. To the extent that Baxter was dissatisfied with the October 9 Order denying its Motion to Stay, its remedy was to appeal that Order to the undersigned within 10 days, pursuant to the procedures set forth in Rule 72(a), Fed.R.Civ.P., and Local Rule 72.3(b). The rules are clear that "[a] party may not assign as error a defect in the order not timely objected to." Rule 72(a). Unquestionably, Baxter failed to submit objections to the October 9 Order in a timely manner (or ever); therefore, Baxter cannot now be heard to argue that a stay should be granted when that issue has long since been decided against it. Simply put, any objection by Baxter relating to the failure of the Magistrate Judge to grant its Motion to Stay is not properly before this Court, because Baxter failed to comply with the procedures delineated in Rule 72(a) and LR 72.3(b). For this reason, this Court will not revisit the October 9 Order or

the stay issues adjudicated therein.[5]

> **B.      Whether Federal Question Jurisdiction Exists.**

As noted *supra*, the Complaint on its face identifies no federal causes of action, but is instead couched exclusively in state-law theories of liability.  Nonetheless, Baxter has consistently taken the position that federal question jurisdiction properly lies here "because Plaintiffs' claims raise a substantial federal question."  (Doc. 1, at 4.)  The law is clear that, even in the absence of a federally created cause of action, "in limited circumstances, federal-question jurisdiction may also be available if a substantial, disputed, question of federal law is a necessary element of a state cause of action."  *Jairath v. Dyer*, 154 F.3d 1280, 1282 (11ᵗʰ Cir. 1998).  This "substantial federal question" doctrine for invoking § 1331 jurisdiction has been accepted as a means of "captur[ing] the commonsense notion that a federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law, and thus justify resort to the experience, solicitude, and hope of uniformity that a federal forum offers on federal issues."  *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*,

---

[5]      Three other points bear mentioning.  First, the practical effect of Baxter's suggestion that this action be stayed pending transfer to the MDL proceedings would be to place this case in limbo indefinitely.  The Court understands that the MDL Panel determined at its January 29, 2009 session that no action would be taken on the proposed transfer of this action to the MDL proceedings until such time as the Motion to Remand has been finally adjudicated by this Court.  The MDL Panel is awaiting this Court's disposition of the Motion to Remand.  As such, it would be both circular and grossly inefficient for the undersigned to decline to decide the Motion to Remand until after the MDL Panel rules on the transfer issue.  Such a stalemate would needlessly delay this action.  Second, the Court cannot agree with Baxter's underlying suggestion that the possibility of MDL transfer necessarily and reflexively precludes adjudication of jurisdictional issues pre-transfer.  *See, e.g., Betts v. Eli Lilly and Co.*, 435 F. Supp.2d 1180 (S.D. Ala. 2006) (rejecting notion that district courts should automatically defer motions to remand to MDL Panel and opining that "fraudulent joinder issues are particularly poor candidates for reflexive deferral").  Many of Baxter's arguments in favor of a stay in this case are effectively and persuasively rebutted by the reasoning of *Betts*.  Third, it is inaccurate to assert, as Baxter does, that the federal question jurisdiction analysis will be "practically identical across heparin cases."  (Doc. 40, at 5.)  Different heparin plaintiffs may structure their complaints very differently.  By way of example, some plaintiffs may rely on the FDCA as establishing a standard of care for the pharmaceutical companies, while others may not.  These case-specific variations may materially impact the § 1331 analysis in each particular case, such that generalizations across all heparin cases may be impossible or unwieldy, and may warrant adjudication of the jurisdictional issue in advance of any MDL transfer.

545 U.S. 308, 312, 125 S.Ct. 2363, 162 L.Ed.2d 257 (2005).  In determining that the substantial federal question doctrine did not support § 1331 jurisdiction in this action, the Magistrate Judge scrutinized and applied *Grable* and *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804, 106 S.Ct. 3229, 92 L.Ed.2d 650 (1986).  As its second objection to the Report and Recommendation, Baxter maintains that the Magistrate Judge reached the wrong conclusion because he misapplied and misread those authorities.  The Court disagrees.

The Eleventh Circuit's recent decision in *Adventure Outdoors, Inc. v. Bloomberg*, --- F.3d ----, 2008 WL 5264677 (11ᵗʰ Cir. Dec. 19, 2008), helpfully summarizes and demystifies the present state of the law in this Circuit concerning the substantial-federal-question basis for federal question jurisdiction.  According to *Adventure Outdoors*, the relevant test for the substantial-federal-question variant of § 1331 jurisdiction is whether "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."  *Id.* at *4 (citing *Grable*, 545 U.S. at 314).  The *Adventure Outdoors* court made clear, however, that this test does <u>not</u> amount to a "general rule of exercising federal jurisdiction over state claims resting on federal ... statutory violations."  *Id.* at *4 (citing *Grable*, 545 U.S. at 319).  To the contrary, the *Grable* test is properly read as authorizing substantial-federal-question jurisdiction in only a "special and small category" and a "slim category" of cases.  *Id.* at *4-5 (citing *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 699-701, 126 S.Ct. 2121, 165 L.Ed.2d 131 (2006)).  Those cases in which substantial federal questions exist will generally be those involving a "nearly pure issue of [federal] law," rather than those involving "fact-bound and situation-specific" contexts in which federal questions are enmeshed.  *Id.* at *4 (citing *Empire Healthchoice*, 547 U.S. at 700-01).

In criticizing the Report and Recommendation's § 1331 analysis as erroneous, Baxter characterizes the Complaint as "squarely challeng[ing] determinations made by the FDA and the adequacy of federal requirements governing the manufacture and sale of prescription drugs" and as "requir[ing] a determination that specific aspects of the federal regulatory process are inadequate to protect the public health."  (Doc. 40, at 9.)  The Court has closely examined the Complaint in vain for these sorts of wholesale attacks on the federal regulatory process governing the manufacture and sale of prescription drugs generally, or the FDA's actions with

regard to Baxter heparin specifically.  Although Ash attributes dozens of different negligent or wanton acts to Baxter (such as failure to use due care in developing, manufacturing, and inspecting heparin; failure to use due care in marketing and promoting heparin; and failure to provide adequate training or information to health care providers concerning the use of heparin), the Complaint does not allege that Baxter is liable because its practices violated the FDCA.  Nor does the Complaint allege the converse, to-wit: that Baxter complied with FDA regulations, but that such regulations were inadequate to protect public health such that Baxter should be held liable despite such compliance.[6]  Baxter insists that the Complaint squarely challenges FDA determinations and the adequacy of federal prescription drug regulations, but such challenges are not evident on the face of the Complaint, which seeks to impose liability on Baxter without regard for its compliance or noncompliance with applicable federal regulations.[7]  To the extent that there is any nexus whatsoever between Ash's claims and federal prescription drug

----

[6]        Baxter has maintained in its briefs that it was in full compliance with the FDCA and FDA regulations; however, its most recent brief shies away from any sort of preemption theory of defense.  (*See* doc. 40, at 10-11.)  If Baxter does not intend to argue that federal law preempts state law in this area, then it is unclear why Baxter's compliance (or lack thereof) with federal regulations is even germane to Ash's claims of negligence, wantonness, breach of warranty and the like, all of which appear to reference duties and standards of care decoupled from and independent of those federal standards.

[7]        To be sure, the 28-page Complaint does contain a handful of references to the Food and Drug Administration, the FDCA, and federal regulations.  Most notably, the fact section of the Complaint includes allegations that the FDA discovered a contaminant in heparin in March 2008, that the FDA has found such contamination in Baxter heparin, that the FDA has identified numerous problems at the Chinese plant from which Baxter received the active ingredient for its heparin, and that the FDA has found that the Chinese plant violates the FDCA.  (Complaint, ¶¶ 34-41.)  But this is all factual background, rather than a cause of action alleging that Baxter is liable to Ash because Baxter's supplier operated its facility in a manner that violated the FDCA.  Elsewhere, Count Four of the Complaint alleges that Baxter "warranted to the FDA, physicians, hospitals, healthcare providers and the general public, including the Plaintiff, that their Heparin products were both efficacious and safe."  (*Id.*, ¶ 70.)  Baxter's position is that this allegation "directly raises federal law" (doc. 25, at 12), but its reasoning is both unstated and opaque.  Baxter may be held liable to Ash in Count Four for breach of warranty even in the absence of any warranties to the FDA, so it appears that federal law will be unnecessary to the analysis of whether Baxter breached an express warranty in such a manner as to create liability to Ash under Count Four.

regulations, the actions of the FDA or the FDCA, that link is attenuated and indirect, rather than necessary and direct.[8]

These logical gaps and analytical shortcomings in Baxter's § 1331 argument place this action firmly beyond the "slim category of cases" in which federal question jurisdiction may be appropriate for state-law tort claims based on the presence of a substantial federal question. To qualify for § 1331 jurisdiction, Ash's state-law claims must, *inter alia*, "necessarily raise a stated federal issue, actually disputed and substantial." *Adventure Outdoors*, 2008 WL 5264677, at *4. What federal issue is "necessarily raised" by Ash's claims against Baxter? The allegations of the Complaint do not reasonably support a conclusion that federal law is the sole source of any legal duty of care that Ash imputes to Baxter for the negligence/wantonness claims; moreover, the questions of breach of warranty, fraud, AEMLD, and deceptive trade practices in the Complaint all appear to exist independently of federal law. Nothing in the Complaint would support a finding that Ash must prove a violation of the FDCA in order to prevail against Baxter.[9]

---

[8]     Further illustration of the defects in Baxter's position may be instructive. Baxter characterizes plaintiffs' claims against it as "involv[ing] whether a drug was 'adulterated' within the meaning of the FDCA and whether Plaintiffs can recover despite across-the-board regulatory compliance with myriad aspects of the FDCA." (Doc. 40, at 12.) As to the first point, Baxter fails to explain how plaintiffs' claims hinge on the statutory definition of "adulterated." The Complaint does not so specify. The Court is aware of no principle of law, and Baxter has identified none, that would foreclose plaintiffs from recovering on their state-law claims if the heparin were simply "contaminated" or "tainted" within the general meaning of those terms, irrespective of whether the statutory definition of "adulterated" in the FDCA was satisfied. As to the second point, Baxter creates a false dilemma by <u>assuming</u> such "across-the-board regulatory compliance" with the FDCA. Nothing in the Complaint supports such an assumption, and Baxter has made no showing otherwise. Suppose a finder of fact makes factual determinations (as it certainly could, based on the allegations of the Complaint) that are inconsistent with both "across-the-board regulatory compliance" and discharge of a duty of care by Baxter. In that event, the conflict that Baxter identifies would simply evaporate, again demonstrating that the federal questions identified by Baxter have not necessarily been joined in this action. More fundamentally, if Baxter does not intend to argue preemption, then why would its compliance with federal standards matter when Ash's cause of action relates to a separate state-law standard of care? This example underscores Baxter's attempt to force a square peg into a round hole to establish substantial-federal-question jurisdiction. The peg simply does not fit.

[9]     With respect to the FDCA, Congress did not intend to create a private federal remedy for violations of that statute. *See Merrell Dow*, 478 U.S. at 810-11. The absence of a

Furthermore, whether Baxter actually committed these breaches of duty, fraudulent activities, and the like is a highly fact-intensive, situation-specific matter that may be decided without delving into unsettled, purely legal questions under federal law.  Both the Supreme Court and the Eleventh Circuit have held that the substantial-federal-question doctrine does not apply in such circumstances.  *See Empire Healthchoice*, 547 U.S. at 700-01 (distinguishing *Grable* and finding no substantial federal question in case that presented "fact-bound and situation-specific" claims, rather than a "pure issue of [federal] law," and emphasizing that "it takes more than a federal element" to attain substantial-federal-question jurisdiction); *Merrell Dow*, 478 U.S. at 807 (affirming appellate court's determination that § 1331 jurisdiction was lacking where "[p]laintiffs' causes of action referred to the FDCA merely as one available criterion for determining whether Merrell Dow was negligent" and that "the jury could find negligence on the part of Merrell Dow without finding a violation of the FDCA," such that "plaintiffs' causes of action did not depend necessarily upon a question of federal law"); *Adventure Outdoors*, 2008 WL 5264677, at *5-6 (plaintiffs' state-law negligence claims flunk the "necessarily raise a stated federal issue" requirement where defendants' alleged legal duty existed independently of federal law and complaint required resolution of factual matters that do not involve application of federal law).[10]

_____

federal private right of action is properly regarded as "evidence relevant to, but not dispositive of," the absence of a substantial federal question supporting jurisdiction under § 1331.  *Grable*, 545 U.S. at 318.  Thus, while this Court does not assign dispositive weight to the lack of any federal private right of action in the FDCA, that fact is nonetheless properly considered (as the Magistrate Judge did) in determining whether or not a substantial federal question exists, inasmuch as Congress's decision not to create a federal private right of action is at least some indication that it did not intend to fling open the federal courthouse doors to litigants aggrieved by pharmaceutical companies' alleged noncompliance with that statute.

[10]     The *Adventure Outdoors* panel reached a similar conclusion, albeit via a different analytical pathway, with respect to the plaintiffs' state-law defamation claims.  As to those causes of action, a disputed federal question did exist because the allegedly defamatory statement accused the plaintiffs of violating federal gun laws, such that a determination would be necessary as to the truth or falsity of that statement (*i.e.*, whether plaintiffs did or did not violate federal gun laws) to resolve the defamation claims.  Notwithstanding the presence of a federal issue necessarily bound up in those claims, the Eleventh Circuit concluded that no <u>substantial</u> federal question was raised, distinguishing *Grable* as follows: "The dispute between the parties

-9-

In short, this case is a very poor candidate for *Grable* "substantial-federal-question" jurisdiction. Such jurisdiction is not triggered whenever federal regulations or standards may be peripherally involved in the litigation. Baxter has failed to show either (a) that its compliance (or lack thereof) with FDA regulations or the FDCA is a necessary element of Ash's claims, or (b) that any substantial dispute exists between the parties concerning any purely legal issue arising under federal law that may be material to these proceedings. At best, Baxter relies on stray references to the FDA or the FDCA in the Complaint that are not integral to, and in fact appear ancillary to or even divorced from, plaintiffs' claims or theories of liability. Baxter stretches the boundaries of reason and common sense to grasp at a federal question here, suggesting that this lawsuit is somehow a referendum on the FDA's heparin determinations and a sweeping indictment against the adequacy of federal prescription drug regulations. It is no such thing. Whatever questions of federal law may be presented in the Complaint are attenuated and insubstantial, if they are even raised at all. By all appearances, the jury could find Baxter liable on each of the counts against it in the Complaint without making any determinations regarding its compliance or noncompliance with the FDCA, the actions of the FDA, or the sufficiency of the federal regulatory scheme. If Baxter is found liable, a possible implication of that finding may be that it was negligent or wanton in ways that the FDA did not adequately protect against, or conversely that it failed to live up to FDA or FDCA standards; however, by all appearances, no such explicit finding need or likely will be made here. Baxter's argument contorts the nature of the Complaint beyond recognition in an effort to squeeze it within the narrow, ill-fitting

---

concerns the factual basis for the defendants' statements accusing the plaintiffs of violating federal law. Clear federal guidance exists on every question of federal law relevant to evaluating the falsity of those statements. ... While this case does raise an important federal issue, the federal issue in this case does not implicate in a significant way the concerns that supported the exercise of federal jurisdiction over the state-law claim in *Grable*." 2008 WL 5264677, at *11. The same is true here. Certainly, Baxter has never argued, much less shown, that unsettled, purely legal questions of federal law are necessarily joined in Ash's state-law causes of action against it, or that inadequate federal guidance exists as to any federal issues implicated by the Complaint; rather, it appears from the Complaint that this action will turn on the predominantly fact-based, context-specific questions of whether Baxter did exercise due care, whether it refrained from making fraudulent statements, whether it made and complied with any express and implied warranties, and the like.

confines of the *Grable* test.[11]

A removing defendant must establish the propriety of removal under 28 U.S.C. § 1441 and, therefore, must establish the existence of federal jurisdiction.  *See Friedman v. New York Life Ins. Co.*, 410 F.3d 1350, 1353 (11th Cir. 2005) ("[i]n removal cases, the burden is on the party who sought removal to demonstrate that federal jurisdiction exists") (citation omitted); *see generally King v. Cessna Aircraft Co.*, 505 F.3d 1160, 1171 (11th Cir. 2007) ("Where, as here, the plaintiff asserts diversity jurisdiction, he has the burden to prove that there is diversity."). Because removal infringes upon state sovereignty and implicates central concepts of federalism, removal statutes must be construed narrowly, with all doubts resolved in favor of remand.  *See University of South Alabama v. American Tobacco Co.*, 168 F.3d 405, 411 (11th Cir. 1999) (explaining that strict construction of removal statutes derives from "significant federalism concerns" raised by removal jurisdiction).[12]  In light of the foregoing analysis, the Court determines that Baxter has failed to meet its burden of showing this case to fit within the slim

---

[11]     Perhaps Baxter's strongest argument (which it has neither expressly made nor developed) on the § 1331 issue is that defendants Scientific Protein Laboratories and Tech-Pool Bio Pharma are alleged to manufacture the (tainted) active ingredient for Baxter at a Chinese facility where the FDA found many problems.  It appears from the Complaint that Ash may point to the FDCA as one source of the standard of care that it claims SPL and Tech-Pool breached. As in *Merrell Dow*, however, this federal standard of care of just one available criterion for finding those defendants negligent.  Others exist under state law.  Nothing in the Complaint purports to limit Ash to this federal theory, or to proscribe plaintiffs from pursuing other, state-law sources of that duty of care, as well, such that a federal question is not necessarily presented even as to SPL and Tech-Pool.  Even if Ash were <u>necessarily</u> limited to a federal standard of care as to those defendants, which he is not, Baxter has failed to show that any <u>substantial</u> federal question exists, that clear federal guidance does not exist as to these relevant aspects of federal law, or the like, just as was the case with the defamation claims in *Adventure Outdoors*.  Thus, Baxter cannot reach § 1331 jurisdiction by simply pointing to the Complaint's factual allegations of problems (and FDCA violations) at the Chinese plant operated by defendants SPL and Tech-Pool.

[12]     *See also Whitt v. Sherman Int'l Corp.*, 147 F.3d 1325, 1333 (11th Cir. 1998) (expressing preference for remand where removal jurisdiction is absolutely clear); *Burns v. Windsor Ins. Co.*, 31 F.3d 1092, 1095 (11th Cir. 1994) (uncertainties regarding removal are resolved in favor of remand); *Newman v. Spectrum Stores, Inc.*, 109 F. Supp.2d 1342, 1345 (M.D. Ala. 2000) ("Because federal court jurisdiction is limited, the Eleventh Circuit favors remand of removed cases where federal jurisdiction is not absolutely clear.").

-11-

category of authorities delineated by the Supreme Court in *Merrell Dow* and its progeny as to which § 1331 jurisdiction may be supported by the existence of a substantial federal question despite the absence of a federal cause of action.  Given the infirmities in the removing defendants' showing, the Court finds that the considerable doubts concerning the presence of a substantial federal question herein require remand of this action to the extent that removal jurisdiction hinges on 28 U.S.C. § 1331.

C.      *Whether the Resident Defendants were Fraudulently Joined or Misjoined.*

In the alternative to its failed § 1331 theory of federal jurisdiction, Baxter contends that jurisdiction may be predicated on diversity of citizenship pursuant to 28 U.S.C. § 1332.  The law is clear that § 1332 demands complete diversity, such that no plaintiff may be a citizen of the same state as any defendant.  *See, e.g., Florence v. Crescent Resources, LLC*, 484 F.3d 1293, 1297 (11th Cir. 2007) (recognizing "necessary corollary" of diversity jurisdiction that "complete diversity of citizenship" is required) (citation omitted); *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1198 n.31 (11th Cir. 2007) ("Section 1332(a)'s diversity requirement has been interpreted to require complete diversity among the parties."); *Legg v. Wyeth*, 428 F.3d 1317, 1320 n.2 (11th Cir. 2005) ("28 U.S.C. § 1332 requires complete diversity - the citizenship of every plaintiff must be diverse from the citizenship of every defendant.").[13]  Baxter concedes, as it must, that the Complaint on its face does not satisfy the complete diversity rule, inasmuch as both plaintiffs and defendants Dr. Boyer, Providence Hospital and CVSA are all citizens of Alabama.[14]  In an

_____

[13]      Of course, diversity alone is not sufficient to create § 1332 jurisdiction.  Rather, "the court is obligated to assure itself that the case involves the requisite amount in controversy." *Morrison v. Allstate Indem. Co.*, 228 F.3d 1255, 1261 (11th Cir. 2000).  The amount in controversy is assessed as of the date of removal.  *See Everett v. Verizon Wireless, Inc.*, 460 F.3d 818, 822 (6th Cir. 2006) ("In gauging the amount in controversy, courts view the claims from the vantage point of the time of removal."); *Burns*, 31 F.3d at 1097 n.13 ("Jurisdictional facts are assessed on the basis of plaintiff's complaint as of the time of removal.").  Because the complete diversity issue is dispositive of the § 1332 aspect of the Motion to Remand, the Court need not reach the question of whether the requisite $75,000 amount in controversy is satisfied.

[14]      In addition to violating the complete diversity rule, these defendants' Alabama citizenship would foreclose removal under 28 U.S.C. § 1441(b), which bars removal on the basis of diversity if any party in interest properly joined and served as a defendant is a citizen of the state in which the action is brought.  *See, e.g., Lincoln Property Co. v. Roche*, 546 U.S. 81, 90,

attempt to overcome this lack of diversity, Baxter argues that the non-diverse defendants'
citizenship may disregarded for jurisdictional purposes under principles of fraudulent joinder and
fraudulent misjoinder.

> 1. *Fraudulent Joinder.*

"Fraudulent joinder is a judicially created doctrine that provides an exception to the
requirement of complete diversity." *Triggs v. John Crump Toyota, Inc.*, 154 F.3d 1284, 1287
(11th Cir. 1998). Notwithstanding the complete diversity requirement, a non-diverse defendant
who is fraudulently joined does not defeat diversity because his citizenship is excluded from the
diversity calculus. Under well settled law, a finding of fraudulent joinder is appropriate in the
circumstances presented here only if "there is no possibility the plaintiff can establish a cause of
action against the resident defendant. ... The defendant must make such a showing by clear and
convincing evidence." *Henderson v. Washington National Ins. Co.*, 454 F.3d 1278, 1281 (11th
Cir. 2006). The burden on the removing party to prove fraudulent joinder is a "heavy one."
*Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997). In assessing a fraudulent joinder
claim, "the district court must evaluate factual allegations in the light most favorable to the
plaintiff and resolve any uncertainties about the applicable law in the plaintiff's favor." *Pacheco
de Perez v. AT & T Co.*, 139 F.3d 1368, 1380 (11th Cir. 1998).

Recently, the Eleventh Circuit summarized the fraudulent joinder test as follows: "if
there is any possibility that the state law might impose liability on a resident defendant under the
circumstances alleged in the complaint, the federal court cannot find that joinder of the resident
defendant was fraudulent, and remand is necessary." *Florence*, 484 F.3d at 1299.[15] Lending
substance and depth to this "any possibility" language, the appellate court has explained that
"[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need

---

126 S.Ct. 606, 163 L.Ed.2d 415 (2005).

[15] *See also Triggs*, 154 F.3d at 1287 ("If there is even a possibility that a state court
would find that the complaint states a cause of action against any one of the resident defendants,
the federal court must find that the joinder was proper and remand the case to the state court.");
*GMFS, L.L.C. v. Bounds*, 275 F. Supp.2d 1350, 1353-54 (S.D. Ala. 2003) ("A defendant
(typically a resident of the forum) is fraudulently joined if there is no possibility that the plaintiff
can prove a cause of action against him.").

only have a possibility of stating a valid cause of action in order for the joinder to be legitimate."
*Triggs*, 154 F.3d at 1287; *see also Pacheco de Perez*, 139 F.3d at 1380 (mere "colorable claim"
is sufficient to negate fraudulent joinder argument and to compel remand).  Nonetheless, it bears
emphasis that "[t]he potential for legal liability must be reasonable, not merely theoretical," in
order to foil a fraudulent joinder theory.  *Legg*, 428 F.3d at 1325 n.5 (observing that possibility
of liability is evaluated by reason and common sense, and that more is required than such a
possibility that a designated residence might be struck by a meteor on a given evening).[16]

   The unambiguous directive emerging from the above authorities is that the fraudulent
joinder component of the Motion to Remand turns on "whether the defendants have proven by
clear and convincing evidence that no Alabama court could find this complaint sufficient" to
state a viable cause of action against the non-diverse defendants.  *Henderson*, 454 F.3d at 1284.

   The Magistrate Judge concluded that the non-diverse defendants were not fraudulently
joined, and that complete diversity was therefore lacking.  In objecting to this aspect of the
Report and Recommendation, Baxter argues that Ash's claims against Dr. Boyer, Providence
Hospital, and CVSA fail to satisfy the heightened pleading standard imposed by Alabama law
for certain claims against medical providers pursuant to Ala. Code § 6-5-551.[17]  This objection is
unpersuasive.  In *Henderson v. Washington Nat. Ins. Co.*, 454 F.3d 1278 (11th Cir. 2006), the
Eleventh Circuit counseled lower courts not to parse the sufficiency of the pleadings under state-
law pleading requirements in the fraudulent joinder context.  The district court in *Henderson*
denied the plaintiff's motion to remand on the ground that the non-diverse defendant was

---

[16]    In weighing the parties' respective arguments, the Court examines "the plaintiff's
pleadings at the time of removal, supplemented by any affidavits and deposition transcripts
submitted by the parties."  *Legg*, 428 F.3d at 1322 (citation omitted).  In that respect, the
procedural mechanism for resolving a fraudulent joinder objection is akin to that utilized on
summary judgment.  *See id.*  Neither side has proffered affidavits or deposition transcripts here;
therefore, the Court's analysis necessarily focuses on the pleadings.

[17]    That section provides, in part, as follows: "In any action for injury, damages, or
wrongful death, whether in contract or in tort, against a health care provider for breach of the
standard of care, ... [t]he plaintiff shall include in the complaint filed in the action a detailed
specification and factual description of each act and omission alleged by plaintiff to render the
health care provider liable to plaintiff and shall include when feasible and ascertainable the date,
time, and place of the act or acts."  Ala. Code § 6-5-551.

fraudulently joined because the plaintiff had not adequately pleaded fraudulent concealment to trigger the savings clause of Ala. Code § 6-2-3. The appeals court reversed, reasoning that "[o]ur task is not to gauge the sufficiency of the pleadings in this case." *Henderson*, 454 F.3d at 1284. The panel further explained, "In this case, the decision as to the sufficiency of the pleadings is for the state courts, and for a federal court to interpose its judgment would fall short of the scrupulous respect for the institutional equilibrium between the federal and state judiciaries that our federal system demands." *Id.*

The point is this: This Court need not and will not make a conclusive determination as to whether Ash's allegations against the non-diverse defendants comport with the special pleading requirements prescribed by Ala. Code § 6-5-551. Rather, all that is necessary is for the Court to find, and the Court expressly does so find, that Baxter has failed to make a clear and convincing showing that no Alabama court could deem Ash's complaint against the non-diverse defendants sufficient under Ala. Code § 6-5-551. Ash's allegations may ultimately prove to be inadequate, but the Court cannot say at this time that there is no possibility that the § 6-5-551 pleading standards have been satisfied here. To the contrary, it appears that the Complaint satisfies the baseline requirements of giving the resident defendants fair notice of their allegedly negligent/wanton acts, the time and place when they occurred, and the resulting harm to Ash. Nothing more is required under § 6-5-551. *See generally Mikkelsen v. Salama*, 619 So.2d 1382, 1384 (Ala. 1993) (explaining that courts should strive to find that § 6-5-551 has been satisfied as long as complaint gives health care provider fair notice of the allegedly negligent act, the time and place it occurred, and the resulting harm); *Betts v. Eli Lilly and Co.*, 435 F. Supp.2d 1180, 1188-89 (S.D. Ala. 2006) (applying *Mikkelsen* and finding reasonable probability that plaintiff's allegations satisfy § 6-5-551). Accordingly, in hewing to the guidance of *Henderson*, with due consideration for the balance and respect between federal and state judiciaries, it is ultimately for the Alabama state courts, and not this federal court, to make a definitive determination as to whether the Complaint satisfies the Alabama pleading rule spelled out at § 6-5-551. Thus, Baxter has failed to prove by clear and convincing evidence that the non-diverse defendants were fraudulently joined, and its objections to the Report and Recommendation on this point are **overruled**.

-15-

2.       *Fraudulent Misjoinder.*

As its final objection to the Report and Recommendation, Baxter faults the Magistrate Judge for not finding that the non-diverse defendants were fraudulently misjoined.  Baxter's misjoinder theory is that plaintiffs' claims against the medical provider defendants relate to Ash's treatment at the hospital, while their claims against the pharmaceutical defendants relate to alleged contamination of heparin during the manufacturing process, such that the two sets of claims are wholly unrelated.  The Magistrate Judge found no fraudulent misjoinder.  This Court agrees.

The Eleventh Circuit has held that, in certain circumstances, misjoinder may be a species of fraudulent joinder, pursuant to which the citizenship of misjoined parties may be disregarded. *See Tapscott v. MS Dealer Service Corp.*, 77 F.3d 1353, 1360 (11ᵗʰ Cir. 1996) ("Misjoinder may be just as fraudulent as the joinder of a resident defendant against whom a plaintiff has no possibility of a cause of action."), *abrogated on other grounds by Cohen v. Office Depot, Inc.*, 204 F.3d 1069 (11ᵗʰ Cir. 2000).  For joinder of multiple defendants to be proper under Rule 20, Fed.R.Civ.P., there must be "(1) a claim for relief asserting joint, several, or alternative liability and arising from the same transaction, occurrence, or series of transactions or occurrences, and (2) a common question of law or fact."  *Tapscott*, 77 F.3d at 1360.  That said, the law of this Circuit is clear that not every misjoinder amounts to fraudulent joinder; rather, only in egregious circumstances does misjoinder constitute fraudulent joinder.  *See Tapscott*, 77 F.3d at 1360 ("We do not hold that mere misjoinder is fraudulent joinder, but we do agree ... that Appellants' attempt to join these parties is so egregious as to constitute fraudulent joinder."); *Walton v. Tower Loan of Miss.*, 338 F. Supp.2d 691, 695 (N.D. Miss. 2004) ("It is thus apparent that, for *Tapscott* to be applicable, this court would be required to find a level of misjoinder that was not only improper, but grossly improper .... Clearly, this is a difficult burden for defendants to meet."); *Brooks v. Paulk & Cope, Inc.*, 176 F. Supp.2d 1270, 1277 (M.D. Ala. 2001) ("As earlier discussed, misjoinder must be egregious in order for there to be fraudulent joinder.").  The precise legal threshold that is necessary to establish "egregious misjoinder" has not been pinpointed.  *See, e.g., Yates v. Medtronic, Inc.*, 2008 WL 4016599, *7 n.4 (S.D. Ala. Aug. 26, 2008) (collecting cases and noting that *Tapscott*'s failure "to define egregious misjoinder as opposed to mere misjoinder has left courts in its wake ... struggling to define the term").

-16-

Ash's claims against the diverse pharmaceutical defendants are distinct in some respects from those against the non-diverse medical provider defendants.  As to the former group, Ash maintains that those defendants are liable because they, *inter alia*, failed to use due care in developing, manufacturing, and inspecting heparin.  As to the latter group, Ash seeks to hold them liable for, *inter alia*, failing to use due care in recognizing and treating the HIT syndrome that culminated in the amputation of his arm.  These two sets of claims may be distinguishable, but they are also overlapping.  Ash seeks recovery for a single injury, to wit, the personal injuries he sustained after being administered heparin during his surgery on August 23, 2006.  Plaintiffs' claims against both sets of defendants plainly arise from the same transactions or occurrences (namely, the surgery, the administration of heparin, and Ash's ensuing medical complications).  And these claims undoubtedly share common issues of fact or law, including without limitation the causes, nature and extent of Ash's injuries.  As the Magistrate Judge correctly recognized, the nexus between Ash's claims against the pharmaceutical defendants and his claims against the medical provider defendants is underscored by Paragraph 54 of the Complaint, which specifically alleges that the pharmaceutical defendants negligently or wantonly failed to provide adequate training, information and warnings to Ash's health care providers about the risks associated with heparin.  The nature and extent of Baxter's warnings to the medical provider defendants are of course directly relevant to whether those medical provider defendants conducted themselves negligently in treating Ash, administering heparin to him, monitoring his condition, and recognizing and treating the HIT syndrome when it arose.  There being clear overlapping common questions of fact, and both sets of claims plainly arising from the same series of transactions or occurrences, the Court agrees with the Report and Recommendation's determination that there is no misjoinder under Rule 20 here.[18]

---

[18]     To be sure, federal courts confronted with analogous sets of claims in the pharmaceutical / medical malpractice setting have reached varying conclusions on the misjoinder issue.  Given the specific claims and allegations of Ash's Complaint, however, the Court finds persuasive the reasoning in the line of cases finding no misjoinder in such circumstances.  *See, e.g., Yates*, 2008 WL 4016599, at *8-9 (finding "clear direction given by the Supreme Court of Alabama allowing litigants to combine medical malpractice claims with product liability claims" and recognizing shared questions of fact or law uniting the two sets of claims); *McDowell v. Davol, Inc.*, 2008 WL 2713708, (E.D. Tenn. July 10, 2008) (where plaintiff sued both makers of

Even assuming that there is a misjoinder of the non-diverse defendants here, Baxter has not satisfied its heavy burden of establishing that the misjoinder was so egregious as to constitute fraudulent joinder.  Indeed, in advancing its misjoinder argument, Baxter has focused on establishing garden-variety misjoinder, without articulating how the circumstances of this case could amount to "egregious misjoinder" as would be necessary to reach a fraudulent joinder determination under *Tapscott*.  This Court will not develop the removing defendants' jurisdictional arguments for them, and in any event perceives no basis on these facts for holding that Dr. Boyer, CVSA and Providence Hospital were all so "egregiously misjoined" so as to eliminate their non-diverse citizenship from the jurisdictional equation.  *See Ramey v. Gilbert*, 2005 WL 3149381, *3 (M.D. Ga. Nov. 23, 2005) (rejecting removing defendant's fraudulent misjoinder argument where defendant failed even to contend that the alleged misjoinder in this case was egregious, but instead argued mere misjoinder).

For all of these reasons, the Court **overrules** Baxter's objections to that portion of the Report and Recommendation addressing the fraudulent misjoinder theory of § 1332 jurisdiction in this action.  Baxter having failed to meet its weighty burden of showing fraudulent joinder or fraudulent misjoinder, there can be no exercise of diversity jurisdiction over this action because complete diversity of citizenship does not exist.  Accordingly, this Court cannot and will not exercise subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332.[19]

---

hernia patch and physicians who treated him and implanted the patch, there was no fraudulent misjoinder because of the recurring question regarding who is responsible for plaintiff's injuries, with all claims arising from the same transaction or occurrence); *Greene v. Novartis Pharmaceuticals Corp.*, 2007 WL 3407429, *4 (M.D. Ga. Nov. 14, 2007) (rejecting fraudulent misjoinder argument where plaintiffs brought product liability claim against pharmaceutical manufacturer and medical malpractice claim against health care provider for prescribing that drug, such that both sets of claims arose from same transaction or occurrence); *Galati v. Eli Lilly and Co.*, 2005 WL 3533387, *4 (W.D. Mo. Dec. 22, 2005) (finding no fraudulent misjoinder where plaintiff sued both doctors and manufacturer of drug for personal injuries allegedly resulting from his treatment with the drug).

[19]      In a last-ditch attempt to preserve a federal forum, Baxter encourages this Court to sever the claims against the pharmaceutical defendants from those against the medical provider defendants, essentially splitting this action in half, pursuant to Rule 21, Fed.R.Civ.P. Baxter envisions this Court remanding Ash's claims against the non-diverse defendants back to state court, but retaining Ash's claims against the diverse defendants in this forum.  The Court

### III.   Conclusion.

For all of the foregoing reasons, the Court finds no error in the specific challenged findings of the Report and Recommendation, or in the overall conclusion of the Magistrate Judge that federal subject matter jurisdiction is wanting in this case.  Accordingly, it is hereby **ordered** that the Report and Recommendation (doc. 38) is **adopted** and Baxter's Objections (docs. 39, 40) to same are **overruled**.  There being no federal jurisdiction over this action, plaintiffs' Motion to Remand (doc. 13) is **granted** and this action is hereby **remanded** to the Circuit Court of Mobile County, Alabama, for further proceedings.

DONE and ORDERED this 16th day of February, 2009.

s/ WILLIAM H. STEELE
UNITED STATES DISTRICT JUDGE

---

declines to adopt such a course of action.  The Supreme Court has cautioned that "creating" federal jurisdiction through the severance procedure should be employed sparingly, and should not be done when any prejudice will result.  *See Newman-Green, Inc. v. Alfonzo-Larrain*, 490 U.S. 826, 838, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) (authority to dismiss dispensable non-diverse parties "should be exercised sparingly" and should not be exercised without "carefully consider[ing] whether the dismissal of a nondiverse party will prejudice any of the parties in the litigation").  To subdivide this lawsuit into two separate cases would be highly inefficient, and would render this litigation more cumbersome and fragmented.  Ash would be required to fight a war on two fronts, litigating some of the very same issues in both fora, with the potential for inconsistent results as to those overlapping issues.  These concerns of prejudice to Ash, as well as those of preserving judicial economy and the Court's reluctance to manufacture federal jurisdiction via artificial means in a case where none exists, all militate strongly against severing the claims in the manner requested by Baxter.  *See Baker v. Tri-Nations Express, Inc.*, 531 F. Supp.2d 1307, 1318 (M.D. Ala. 2008) ("This court is similarly convinced that any Rule 21 discretion to dismiss parties and sever claims to 'create' jurisdiction does not ... promote judicial economy where all of the claims arise out of one accident."); *Spann v. Northwestern Mut. Life Ins. Co.*, 795 F. Supp. 386, 391 (M.D. Ala. 1992) (declining to sever claims against non-diverse defendant on the ground that doing so "would be appropriate only if the court has jurisdiction," which it did not); *Perry v. Norwest Financial Alabama, Inc.*, 1998 WL 964987, *3 (S.D. Ala. Dec. 9, 1998) (refusing to sever claims against non-diverse defendants and characterizing removing defendant's argument in favor of severance as legally unfounded attempt "to climb in the window of federal court" where jurisdiction was lacking).  For these reasons, Baxter's request to cut the non-diverse defendants from this lawsuit and retain the remainder in federal court is **denied**.